Appeals. We have four cases to be submitted today on oral argument. Our plan is to break after the second case briefly and then finish for the day. And we begin with Fears v. Lumpkin. Mr. Schaffer. May it please the court, I'm Randy Schaffer from Houston. I represent Ron Fears, convicted of continuous sexual abuse of a child sentenced to 50 years without parole. The deficient performance in this case is significant and uncontested as we speak, an extreme rarity in a federal habeas ineffective assistance case. It was a fairly extreme error on the state trial courts. It was. You have a detective, a police officer who took the report, a CPS investigator, and two lay witnesses in one form or another providing their opinion that the complainant was telling the truth and that the defendant had committed the sexual abuse against her. Texas case law over the past 40 years has been consistent. An opinion that the witness is telling the truth and the defendant is guilty is inadmissible under Rules of Evidence 701 and 702. If the lawyer doesn't object, it is deficient performance for the first I want to correct, not correct, but point out something that my colleague said in his brief. He's saying we're asking for some per se rule and saying that if this testimony is admitted without the lawyer objecting, it's per se prejudice and I'm not saying that. What I'm saying is in what I would categorize as a he said, she said case with no physical evidence to support the accusation, which is what this case is, that the failure to object to that type of opinion testimony is not only deficient but prejudicial and I distinguish that from a case where you have corroborating evidence such as DNA, a confession, a video of the encounter, text messages that are inappropriate as you see in a lot of these cases or an eyewitness, somebody who walks in and sees some sex act occurring. So I'm certainly not saying it's per se prejudicial. That's fact specific depending on each case. In this case, your main problem as I see it is the rules about deference to state court proceedings. I'm sorry, I didn't get your main problem as I see it is the deference that we give to state court proceedings and I will tackle that voraciously. The trial court found deficient performance and importantly, he found that a motion in limine would have been granted and the jury would have heard none of these opinions. The Court of Criminal Appeals left the deficient performance finding intact. Indeed, there was no way to get around it and all they said, and this was their entire analysis, the defendant hasn't shown prejudice. Now, in determining prejudice... Can I ask you how Texas Rule of Evidence 608 fits in this? Absolutely. I realize that it doesn't allow specifics and I realize you have to wait until somebody's challenged, but it seems obvious to me since the whole case focuses on the young person that they were going to challenge her and eventually everybody could have come in and said, you know, reputation or character or truthfulness. So I'm wondering if the lawyer actually just wanted to throw it open so that he could bring in people like a mother to talk about specifics of why they thought she's a liar. I will satisfy your concern, which is a good one. In Texas, a character witness can testify to an opinion that the complainant is truthful or has a good reputation for being truthful if, as you said, the defendant attacks the character for truthfulness under Rule of Evidence 608A. Now, a fact witness cannot testify to an opinion that the complainant is telling the truth about this offense or that the defendant is guilty. That is totally different than... I know, but I'm thinking that because the defense lawyer's entire voir dire was, well, how do you, you know, how do you value like a mom's testimony? So he's trying to see, you know, how people looked at the opinions of people. And I think it's because the lawyer wanted to open up the world and had the... they made the objection, you wouldn't be able to. Now, I realize that wasn't said. I'm getting all that. But to me, this throw it out there because otherwise you've got a little kid coming in and saying I was sexually assaulted, I think that's something juries tend to believe. Here's what would have been permissible, okay? Let's say nothing happens in the state's case in chief as per the motion in limine. Defense puts on the evidence they put on from the mother, the grandmother, the kid lies, the kid steals, the teachers, the kid pretended to be blind, had us fooled for most of the school year she was blind until we saw her surveillance camera and realized she'd conned us the whole year. The defense could have put every piece of that evidence on and all it would have permitted the state to do would be to call character witnesses in rebuttal. Now, let's play that through, okay? They couldn't call the law enforcement officers and the CPS investigator as character witnesses because they didn't know her character. They didn't know her at all. She just walked in. Why can't they be character witnesses based on having seen her? Well, they don't have a factual basis for it. Why are they not based on having communicated with her? They think that she, that her character is truthful. Well, if they don't know her, I guess they could say it. It wouldn't have much credibility. And as far as the... Well, it would only leave out the one sentence kind of that is objectionable, but it would bring in the bottom line. I mean, I guess what I'm saying is, I think the defense counsel was actually wanting to open the door because they thought that was the only method to win. Now, I realize that hasn't been said. I'm not claiming it. Well, and he testified... I'm just saying, when we look at the prejudice, throwing it all out there, I mean, isn't a mom going to know more about her kid than some person who met the kid for an hour? And you're talking about a strategic decision that counsel could have made, except he testified at the hearing that's not what he did, that he did not intend for this to happen. Oh, I know, but you want your client to win. I'm not being lied on purpose. But you know what I'm saying. I just kind of wonder, given Rule 608, I think all of these people could have testified at least to her character. Well, and if you assume they could, then the other thing the defense lawyer could have done would be to ask, have you heard questions? Have you heard that she's a habitual thief? Have you heard that she's an habitual liar? Have you heard that she fooled her teachers at school by pretending to be blind? If they said, no, I hadn't heard that, then the obvious inference is they don't know her, their opinions— Why isn't the pretending to be blind a specific story that doesn't come in? I'm sorry to— Why isn't the pretending to be blind not a specific story that would not come in? Well, it did. I mean— Okay, because it all came in. Well, but that's not anything that the defense lawyer—you know, the prosecutor could have objected, I guess, to a specific act. He didn't. Also, it could have been a basis for the teacher to explain their opinion about her lack of credibility, what it was based on. Now, let me jump to where we stand here in terms of the AEDPA situation. There has not been a Fifth Circuit case since the Supreme Court decided Harrington v. Richter in 2011 where this court has reversed the state conviction for ineffective assistance based on the double deferential standard of review. It's a high hurdle to get over. I admit that. There's only one case where this court has affirmed a lower court finding of ineffective assistance, and that was Hughes v. Van Ooy. So, let me address the AEDPA issue as follows. Double deference applies to deficient performance, not to prejudice. Prejudice is a legal determination based on the law and the facts. Assuming arguendo that double deference applies even to prejudice, the Court of Criminal Appeals' decision was contrary to an unreasonable application of Supreme Court precedent, and I say that in this regard. The Supreme Court has said in Sears v. Upton, we require a probing and fact-specific analysis of the prejudice component of an IEC claim, and indeed they sent Andrus v. Texas back a year or so ago because the Court of Criminal Appeals didn't do that. The Court of Criminal Appeals' seven words here, we find that the applicant hasn't shown prejudice, is the antithesis of the analysis demanded by the Supreme Court. And as a result, I believe that this court must do a de novo review of prejudice under Panetti v. Quarterman. Now, here's why I believe the prejudice argument is so compelling. First, although the complainant claimed that she had been sexually abused consistently from the ages of 8 through 14, there was no medical evidence to support it. Intact hymen, no notches, no scars, no nothing. Now, on a one-time deal, you may not find that. On the number of instances she described over that period of time, that's pretty far reached to not find any medical evidence. The teacher's testimony was compelling. I mean, a kid that can fool her teachers into believing she is blind for almost an entire school year seems to me wouldn't be so hard to fool a jury that some guy sexually abused her if that was her inclination to do it. She had the ability. And then the mother and the grandmother, who as you pointed out, knew her better than anyone, came in and said, no, some kids you know, they just lie. And some kids tell the truth. And some are in, but most are in between. But when you have a kid who has problems in that regard, the parents know it. The grandparents know it. And so they come in and they tell the jury that. Let me ask you something. Despite all this other evidence that you say was inadmissible but was admitted, why cannot we determine that the jury believed Corey, found her credible, and found it credible, incredible, that the mother would admit that her daughter had been abused by her boyfriend who lived in the house. And then the grandmother supports the mother who says, oh no, this never happened. I'm not that stupid to let this happen. So I think we go back to what did the jury determine with respect to credibility. And they heard from her. And I would point, it's a good question, but I'll point this out. In every one of these cases, every one of them, the jury heard from the complainant and obviously believed the complainant. And that's how the defendant got in front of either an appellate court or a habeas court. So this is endemic to all the cases. What you have here, though, is was the jury's determination of her credibility unfairly skewered by the testimony that the three professional witnesses and the two lay witnesses believed that she was telling the truth about this specific matter and that the defendant was guilty. That is what tips the scales. And I want to address briefly the state's three arguments as to why there's a counter to the prejudice. First they say the police officer, the detective, and the CPS investigator were not testifying as experts. They're just lay witnesses giving lay opinion. What's the big deal? Well, there is no such thing as expert testimony on whether a witness is telling the truth. Kirkpatrick v. State years ago said you can't offer expert testimony on whether a witness is telling the truth. There is no such thing. So anybody, in theory, is testifying as a lay witness when they delve into that area. What you have here, though, is a jury's perception of the testimony of a police officer, a detective, a CPS investigator, people that do this every day for years. And it has greater weight. Secondly, the state is saying this is not per se prejudice under the Lopez case. I never said that it was. Lopez is a direct appeal where the defendant tries to raise this issue on direct appeal without a hearing on a motion for new trial so you have a silent record on why the lawyer didn't object. And all the Court of Criminal Appeals says is we can't presume deficient performance on a silent record. It doesn't have anything to do with the prejudice component. And finally, the state says, well, the jury would assume, and this is kind of what you were relating to, Judge Clement, the jury would assume that these witnesses believed the complainant because they're taking a report, their work is advancing the investigation, and he's charged, and they're testifying, so obviously they believed her. That's not obvious at all. You can't make that assumption, and more importantly, the jury has instructed you to base your verdict on the law and the evidence and not supposition as to who might have believed what. If that argument was sound, if the fact that the jury believed the complainant and this testimony didn't make any difference meant there was no prejudice, how did any of these cases get reversed over the years? And I'll close for now on that point. The state says that if there is epidepherence required, I have to show that every fair-minded judge would disagree with the Court of Criminal Appeals determination there was no prejudice. Let me point this out. Every state case I cited that was reversed on this issue found unanimously there was prejudice even though the complainant testified and the jury obviously believed the complainant, and that decision was made either in the context of a direct appeal where there was an objection to the testimony that came in anyway or a habeas proceeding where there was no objection and it was litigated as ineffective assistance. So I'll leave you with this thought for now. If you can't give relief in this case where you have a finding of deficient performance that has survived into federal habeas and you have a reasoned state court decision from the state district court as to why there was prejudice and you have a Court of Criminal Appeals decision that basically just— it would have been more intellectually honest to just say, you lose. We want the state to win. You lose. If you can't grant relief in that habeas case on ineffective assistance, I would like somebody to tell me what habeas case a federal court could grant relief on. Thank you. Thank you, Mr. Schaffer. You've saved some time for rebuttal. Mr. Rutowski? Thank you, Your Honor. May it please the court, Cody Rutowski for Director Lumpkin. I want to start with the EDPA deference issue that you highlighted, Judge Smith, and respond to the suggestion that the brevity of the state court's opinion here in some way diminishes the deference due to it under EDPA, and that is simply not the case. In Richter and other cases that the Supreme Court has heard, the Supreme Court itself has said that even a summary disposition on the merits that provides no reasons whatsoever is entitled to full deference under EDPA. Now, that's not what we have here. Instead, we have something more akin to what we saw in Thomas v. Manoy, this court's case from early 2018, where the state court's opinion said little. It was laconic, I think, was how this court described Louisiana Supreme Court's opinion in that case. And what this court has to do is that it's the same type of inquiry that the Supreme Court described in Richter, where the federal habeas court has to consider any arguments or theories that could have supported the state court's decision and then decide whether every reasonable jurist would disagree with those arguments and theories. So, yes, here we do have full EDPA deference that does apply to the prejudice finding. Now, the concept that, again, you mentioned Sears v. Upton, the Supreme Court and this court have been clear that a state court opinion doesn't need to cite Supreme Court cases. It doesn't even need to demonstrate an awareness of them. It just must not be inconsistent with them. And here this court's, the Texas Court of Criminal Appeals' decision, was consistent with Strickland. Let me ask you, when the Texas Court of Criminal Appeals remanded the case three times for fact findings, what facts were they looking for? Yes, Your Honor, I believe they were looking just for additional development. They wanted to hear more from the actual trial attorneys themselves. And I believe there's some remanding of what they were looking for on the trial court. And to be honest, I'm not entirely sure what they were looking for each time. I do know eventually they were satisfied and that the record was sufficiently developed for them to conclude that there was no prejudice here. Does that increase our deference, that they actually were really focusing on developing a fulsome record? Is the deference the same whether they've done what they're supposed to do or not? I'm not sure the court really needs to address that because I think the deference here is high enough that whether it was increased by the further factual development or not doesn't really matter. The deference here is too high. It's too high of a bar for him to clear. And it goes to, I guess, kind of the point you were making, Judge Haynes and Judge Clement, about the evidence here was really largely cumulative, right? As we said in our briefing, what we have is testimony from individuals that were involved in this investigation that led to a prosecution. So as the Texas Third Court of Appeals said in the Sandoval case cited in our briefing, it was just logical for the jury to assume that these individuals believed her at least enough to progress the investigation. Yeah, and one of the prospective jurors said that in the voir dire, kind of, you know, that they thought, you know, well, something happened. That's why we're here. Yes, Your Honor. And again, to look at some of these statements that we have too, they aren't the same type of opinion testimony in the cases that opposing counsel has cited here. So a lot of those cases, and this is why the expert point matters, the state proffered individuals that were purportedly experts in whether someone was telling the truth or whether a complainant was telling the truth here. These are psychologists, rape counselors, people like that. They were qualified as experts. Well, Mr. Schaffer draws the important distinction between testimony about whether a person is generally credible and whether the person is credible in the case that's being tried. Do you agree that that's a legitimate distinction? Yes, Your Honor. Certainly character for truthfulness is different than whether someone is telling the truth in a given situation. But again, to also look at the testimony that we have here, it's really not quite as direct on this issue as saying, I believe this person, this person's credible. Instead, when we're looking at the testimony officers, Andrade and Investigator Lopez, what we're seeing a lot there is trial counsel establishing that there was no other evidence here, that all it was was this victim's word, and that's it. And again, it's not some grand statement of, did you find this person credible? It's just, there's nothing else here. That was the thrust of that testimony. And again, to look at the testimony of, say... How do you analyze how 608 plays in here, rule of evidence 608, my discussion with your opponent? Certainly, I think it would be relevant to a harmless error analysis here that a court could have conducted because, as you said, most of this evidence really could have come in in some way or another. Indeed, trial counsel, in an affidavit, I believe it's pages 2259-60 of the record, and then I think 2266-67, explains that their strategy was exactly as you suggested, is get everything in there and also emphasize that the state's witnesses don't really have any backstory on the victim here, that they don't know about this pension for lying that the other witnesses do, and thus put as much as possible on her word and then attack her credibility using the testimony of her mother, her grandmother, and her teachers, individuals who would seemingly have more insight. Know her better. Sorry? Know her better. Correct. Yes, Your Honor. And so, does it make... I mean, is there much that would have been kept out if they had followed the correct rule, 608 process? I know that they couldn't put it on in their original presentation, but what I'm saying is eventually that could have... almost all of that could have come in. I believe they're telling the truth, but my perception was the character of truthfulness. Certainly, Your Honor. That testimony of Natalie St. John that Pierce has pointed to here is perhaps the most clear example of something that absolutely could have come in. And even that, though, in context, perhaps was very much establishing that Natalie did not know her well enough to be familiar with her background or her lack of... her penchant for lying, her history of untruthfulness. You acknowledge, I assume, that the way the evidence was presented, that some of it was improperly presented. Yes, Your Honor, some of it was. Now, whether all of it would have necessarily been omitted from the record, or whether objections to it all would have been sustained is, frankly, unclear, looking at the context in which they were brought in. So there I'm thinking about the testimony from Chesney St. John. Specifically, it's not about the credibility of the witness as much as it is about identifying a particular sexual act. Explained in context there, Chesney was talking to the victim after one of her interviews and was unfamiliar with some of the terminology that had been used, specifically the term oral sex. So after Chesney explained what that was to the victim, then the testimony reads, did you believe that's what happened? But in context, it's fairly read to mean, is that what the victim was describing here? Not, do you believe this person is this person, truthfully? Again, what we're looking at here is, he needs to show that every reasonable jurist will conclude that it's reasonably likely that fears would have fared better at trial here, and he just can't do that because there is an abundance of evidence here supporting the victim's credibility. As you mentioned, the victim testified for over two days and gave the jury more than enough opportunity to judge Chesney's testimony. We also have four prior consistent statements that were admitted. There were audio recordings of two of them, video played of a third, and then we also have the testimony from Natalie St. John about what the victim had told her about it. All of those were materially consistent and thus support her credibility. There was also evidence about her demeanor when talking about this, in addition to what the jury was able to see for itself both in court and in the video. Several witnesses, including her biological father, testified that her demeanor was— that she became very emotional, all of which would be consistent with her telling the truth about this story. And then I guess to respond briefly to the state did effectively cross-examine her mother, grandmother, and her teachers. I'll start with the teachers. They emphasize, or teachers conceded on cross-examination that though perhaps the victim had misled or lied to people, she had never done so malignantly and also admitted that it's certainly possible that someone who is acting out at school could be doing so because there are problems at home. She would be consistent with this type of abuse. And again, her mother, I believe, conceded that she's never actually discussed these allegations with her daughter. She jumped to the conclusion that she could not be telling the truth without actually talking to her about it. And I think her grandmother's testimony was that it wasn't believable simply because it had gone on for six years, which is not particularly— which the jury could discredit that particular testimony in that— Is this very much a case that needs the jury because you focus on things like, am I talking loud or am I whispering? Am I crying while I'm talking or am I just looking kind of bored? And all those kinds of things that really impact whether we think somebody is truthful is their conduct, their attitude, not just the words that come out in the transcript. Is this one of those cases, and is that why we have to give deference to the prejudice determination? Yes, Your Honor. I mean, this absolutely does come down to a credibility determination. And the person—the people in the best position to determine that were the jurors who got to watch her in person in that case. But also the mother, you know, was the mother really telling the truth that her daughter's a liar or was the mother trying to cover up for her boyfriend? You know, on and on and on. Sure. And so, but then what do you say to your opponent's argument that, well, are we then never, ever going to reverse on prejudice— or I mean grant habeas, not reverse, but grant habeas on prejudice if we're just going to always defer to the jury? Well, Your Honor, the Supreme Court has made clear that epidefference is an incredibly high hurdle to meet because it was designed to be. That was what Congress was trying to do there. So to say that this case isn't one in which the court would find prejudice does not mean that there is no case whatsoever that could happen, but this case isn't it. Certainly if there had been testimony more akin to the type of testimony in the cases that you cited where you have an expert, people who were put forth as human lie detectors, one of the courts describes them, had those been offered. But that's not what we have here. Had the state emphasized this testimony, this questionably objectionable testimony, in its closing argument, like happened in several of those cases, indeed one of them the court describes the state's closing argument as saying there's no way this girl, or this boy, whoever it was, managed to fool our four experts. That's not what we have here. What the state focused on in its closing was on the consistency of her statements, on her demeanor, and particular details and facts that she knew about Mr. Fierce that she would not have known but for the repeated sexual abuse, including that she was able to provide an accurate description of his genitalia, was familiar with what his semen looked like, kind of things that she should not have known. That was the theme of the closing. The only mention of the other witnesses was simply to talk about her demeanor. I want to also respond briefly on the point of double-deference that opposing counsel raised under AEDPA. The Supreme Court itself described a federal habeas review of the prejudice prong under AEDPA as doubly deferential. That was in Cullen v. Penholster, and that was a case in which the Supreme Court reversed the Ninth Circuit, the very court that Fierce cited in his reply, because that issue was challenged. So Penholster is enough on that point. This court is also in a 2020 case, and I.V. Lumpkin noted that the review of the prejudice prong under AEDPA is doubly deferential. But again, the court doesn't really necessarily need to wade into that and decide whether it's deferential or doubly deferential, because the standard here is clear. The court must, he can succeed only if every reasonable jurist would agree that the outcome of his trial likely would have been different, but for his counsel's allegedly deficient performance, and that's a standard that he can't meet. Whether that standard's deferential or doubly deferential, he cannot prevail either way. And on the issue of there being no medical evidence, there, of course, was testimony from the two medical examiners in this case that that is not unusual at all in this type of case, and indeed many of the cases that Fearside acknowledges much to, that these cases often come forward without physical evidence. Well, Mr. Schaefer's point, at least as I heard it, is that that may be true if there was only one incident, but repeated abuse would normally produce at least some physical evidence over time. Yes, Your Honor, but there's testimony from, I believe it's Sonia Edelman and blanking on the other name, Emma Becker, the two individuals that investigated her, and both of them testified in this very case that it's not unusual at all for there to have been no physical evidence here. So whether it's theoretically possible that prolonged abuse would have left a sign, we also have testimony before the jury that was not objected to and that's not at issue here, or not being challenged here, that is still consistent, and that by no means undermines her story. And I guess I do want to touch on briefly the deficient performance analysis here, so the trial court's, state trial abeast court's finding there is not entitled to any deference and it's not binding on this court. First off, the findings that he points to are not findings of fact of the sort that would have deference under 2254 e.1. Instead, they are conclusions of law, and the only court that this court defers to on is the CCA because that's the last court to adjudicate the claim on the merits. What he really seems to be suggesting here is some type of look-through analysis, similar to what the Supreme Court allowed in Wilson v. Sellers, but that is a rebuttable presumption there that if, say, the CCA didn't provide any reasons whatsoever but came to the same results in the lower court which did provide its reasons, then there's a rebuttable presumption that the CCA would have relied on the lower court's reasoning, but that's not what happened here because, similar to Thomas v. Benoit, the high court came to a different decision and thus almost certainly relied on different reasons, so any presumption there would be rebutted. If there are no further questions, I'm going to ask this court to affirm the district court's judgment. Thank you, Mr. Jahoske. Mr. Schaffer, you've saved some time for rebuttal. May it please the court. I think it would be appropriate to take a moment and focus on what the testimony was that came in that should not have. The original outcry witness testified, I spoke to the complainant and I believe that she and the defendant engaged in oral sex. That witness's mother, who talked to the complainant when she got home, testified that the complainant and I are close and I believe she would not mislead me. The police officer that took the report testified, I believe a crime occurred based on the complainant's statement. The detective testified, I believe a crime occurred based on the complainant's consistent statements and emotional reactions during the interview. And then the defense lawyer listed on cross-examination, I don't believe a child would falsely accuse a parent of sexual abuse. And finally, the CPS investigator, the person that investigates these cases day in and day out, and probably would be considered by a jury to have some degree of expertise in these matters, said, I had to determine if I believed her allegations and I found reason to believe they were true. Now you throw all that into the pot and ask how that would skewer a jury's assessment of the complainant's credibility. My colleague keeps focusing on the fact that he calls all this testimony cumulative. Cumulative of what? If you look at their brief, what they're basically saying is the complainant's testimony is corroborated by the complainant. She told all these different people what happened. She made these videotaped interviews about what happened. She told the CPS investigator what happened. She told the same story to all these people. So she corroborates herself under their theory. Well, so if I leave this courtroom today and I tell somebody a lie about what occurred during an oral argument, but then I tell that same lie to ten more people, does that make me ten times more credible? No, it's just the same lie, repeated. That doesn't corroborate anything. So when the state refers to cumulative evidence, I would categorize that, and I don't know what this means necessarily, but I know courts have said it in my cases about my arguments. They've said this is a post hoc rationalization for what happened. If indeed the state believed at trial that the jury would assume that all these witnesses believed the complainant, as has been represented in the state's brief, then ask yourself this. Why would a prosecutor presume to know the law elicit clearly inadmissible testimony that has been found to be prejudicial and compelled reversal on direct appeal and relief on ineffective assistance on habeas? Why would a prosecutor elicit that testimony if he believed that he had cumulative evidence corroborating the complainant and the jury would naturally believe that all these witnesses believed her anyway? Why take that chance? That's not what they believed at trial. They were thrown into Hail Mary by going into evidence that was not admissible under Texas law and just rolling the dice on whether the defense lawyer would object, and you see it in case after case after case, and most defense lawyers don't object because they probably don't understand it's not admissible. Now, let me leave you with this thought. And I, you know, I'm not, this ain't my first rodeo. I know that I've got a high hill to climb here, but I'm not giving up on it. For you all to deny relief in this case, you would essentially have to reject the reasoning of every state court ineffective assistance case and direct appeal case I've cited on this point in which the complainant testified, the jury believed the complainant, yet the appellate courts granted relief anyway. If it was prejudicial in all of those cases, why in the world would it not be prejudicial in this case in which there was no physical evidence, it was he said, she said, and there was a truckload of defense evidence presented that this was not a credible complainant. So I would ask that you grant relief and grant Ron Fears a new trial. Thank you. Thank you, Mr. Shafer. Your case is under submission. Next case for today, Menzia v. Austin.